Evelyn **BATES**, Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 12156.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 5, 1954.

Decided Jan. 14, 1955.

---

4. U.S Cong.Serv., 81st Cong., 2d Sess., p. 2021 et seq., especially pp. 2056–7, 2060–1 (1950).

5. Sen.Rep. No. 1286, 81st Cong., 2d Sess., id. at 2061.

31

Mrs. A. Lillian C. Kennedy, Washington, D. C., with whom Mr. Eugene A. Chase, Washington, D. C., was on the brief, for appellant.

Mr. Samuel J. L'Hommedieu, Jr., Asst. U. S. Atty., Washington, D. C., with whom Mr. Leo A. Rover, U. S. Atty., and Messrs. Lewis Carroll and Thomas A. Flannery, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before EDGERTON, PRETTYMAN and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant was convicted of violations of the narcotics laws.[1] The principal point upon her appeal is that the trial judge should have directed a judgment of acquittal.

1. The indictment was in two counts. Count One charged a violation of Section 2553(a), Title 26, United States Code, which provides in part:

"It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession same may be found; * * *."
Count Two charged a violation of Section 174, Title 21, United States Code, which provides in part:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be fined * * * and imprisoned * * *."

"Whenever on trial for a violation of this subdivision the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

The trial of the case was brief. Two officers testified that, in the process of locating a person for whom they had a warrant, they went to appellant's place of residence, an apartment opening upon street level on an alley, knocked, and were admitted by her. One officer testified:

"A. During the conversation we noticed the defendant go back to the door and hold her left arm out and make a motion, and we asked her what she was doing.

"And she said: Nothing.

"At that time I opened the door and right at the foot, laying in the alleyway, where we were standing a few minutes previous, was the evidence which I recovered, one brown envelope containing 50 capsules."

The officer testified that he had noticed no brown package on the doorstep as he came in, that it was raining a light drizzle, and that the envelope when picked up was dry. The envelope itself was produced in this court. It was small, 2½″ x 4″, and crumpled. Upon cross and redirect examination the officer repeated the account.

The other officer testified as follows:

"A. The first thing I knew, Officer Brewer asked the defendant what she was doing with her hand out the door, and I looked around, and I seen her standing in the doorway, and she had her arm out the door and her other hand on the edge of the door.

"Q. What did you do?

"A. Well, he looked out there and jumped on down on the ground and picked up this package, and in it was some 50 capsules, each containing a white powder.

"Q. All right. Now, prior to making your entrance into this room there, did you notice any package on the doorstep as you entered?

"A. No, sir, there was none."

Appellant took the stand and denied that she had had the envelope in her possession, that she had thrown anything, that she had closed the door, or that she had put her arm out of the door. She also denied that it was raining. As bearing upon her credibility it was shown that she had been convicted three times for soliciting prostitution and once for a narcotics violation.

The rule governing the trial court in disposing of a motion for directed judgment of acquittal was discussed at length by this court in Curley v. United States.[2] We said there, in part:

"The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter."[3]

The case at bar presents a simple and direct issue of credibility. The testimony was in flat conflict. The jurors had to believe either the appellant or the two officers. If they believed the officers there was no reasonable doubt of guilt. This was clearly a jury

2. 1947, 81 U.S.App.D.C. 389, 160 F.2d 229, certiorari denied 1947, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850.

3. Id., 81 U.S.App.D.C. at pages 392–393, 160 F.2d at pages 232–233.

function, and the trial judge properly left the issue to it.

██ Appellant also argues that, since the convictions rest on "statutory presumptions" of violations, arising from the possession of narcotic drugs, there must be direct proof of possession. She says that to permit a conviction on circumstantial evidence of possession alone would be to rest a conviction on a presumption based on a presumption, and would thus relieve the Government of its burden to prove the defendant guilty beyond a reasonable doubt. But the finding of possession in the case at bar was not a presumed fact. After hearing the evidence and receiving proper instructions on presumption of innocence, reasonable doubt, circumstantial evidence, and credibility of witnesses, the jury concluded that the defendant had possessed the drugs. No presumption was involved; it was a fact reasonably inferable from the testimony presented.

One of the statutes here involved (Section 2553(a), Title 26, United States Code) provides that possession of untaxed narcotics "shall be prima facie evidence of a violation" of that subsection. And the other statute (Section 174, Title 21, United States Code) provides that possession of narcotics "shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." The trial court instructed the jury both by quoting from the statutes and by clear and accurate paraphrasing. Thus, after finding possession of narcotics as a fact, the jury was in a position to find the defendant guilty. This does not mean, however, that the burden of proof was shifted from the Government. Neither the statutes nor the court's instructions to the jury directed or required a conviction from proof of possession. The court's instruction was that from proof of possession the jury "may find the defendant guilty * * * if it sees fit to do so" and, again, that it was "at liberty to find the defendant guilty". The Supreme Court has passed upon the point,[4] and we had occasion to discuss it recently in another connection.[5] We need not add to that discussion.

We find it unnecessary to treat other contentions advanced by appellant.

Affirmed.

4. Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Casey v. United States, 1928, 276 U.S. 413, 418, 48 S.Ct. 373, 72 L.Ed. 632.

5. Maynard v. United States, 1954, 94 U.S. App.D.C. ——, 215 F.2d 336.