412 F.2d 1084
 Orvel Winston LLOYD, Appellant,
v.
UNITED STATES of America, Appellee.
 No. 25133.
 United States Court of Appeals Fifth Circuit.
 May 27, 1969.
 
 1
 Samual S. Jacobson, Jacksonville, Fla., for appellant.
 
 
 2
 Joseph W. Hatchett, John W. Caven, Jr., Asst. U. S. Attys., Jacksonville, Fla., for appellee.
 
 
 3
 Before THORNBERRY and SIMPSON, Circuit Judges, and SUTTLE, District Judge.
 
 SUTTLE, District Judge:
 
 4
 Appellant and George Lamar Nazworth were each convicted on three counts concerning the operation of an illegal distillery.[1] The facts, viewed most favorably to the government, are typically simple. Special Investigator Gazzola, of the Alcohol and Tobacco Tax Division, along with various Florida Beverage Enforcement Agents, began surveillance of a recently discovered illegal distillery in the early morning hours of August 23, 1966. While concealed in the wooded area around the still, the agents saw two men approach the still, heard the banging of cans, and saw the men leave. Agent Gazzola recognized one of the men to be appellant. Continuing the surveillance on August 24, the agents observed the same two men return in a truck and busy themselves about the still and various related equipment in the immediate area. Again Gazzola recognized appellant. The agents were found out, and, after a short chase through the woods, Nazworth was arrested. Appellant, who had escaped in the truck, was arrested in a nearby town September 1, 1966.
 
 
 5
 At the trial, appellant challenged the agents' identification of him as being one of the men at the still, and testified that he was working for his sister in an area remote from the illegal activity.[2] His sister corroborated this claim and the issue was given to the jury with the usual instruction on the alibi defense. The jury believed the agents, and appellant here seeks reversal of the resulting conviction.
 
 
 6
 Appellant first contends that it was plain error[3] for the trial court to instruct the jury in the language of 26 U.S.C. § 5601(b) (2).[4] Recognizing that this statutory "presumption" has been held constitutional in United States v. Gainey,[5] appellant contends that such constitutionality depended upon the Court's finding, and the jury having been told, that the statutory inference was not conclusive, and that,
 
 
 7
 "Even if it [the jury] found that the defendant had been present at the still, and that his presence at the still remained unexplained, the jury could nonetheless acquit him if it found that the Government had not proved his guilt beyond a reasonable doubt."[6]
 
 
 8
 Appellant contends that the reading to the jury in this case of the verbatim language of the statute, without such qualifying instructions, was plain error, requiring reversal.
 
 
 9
 While it is clearly the better practice to instruct the jury in terms of "inference" with the further instructions given by the trial court in Gainey,[7] we do not believe that failure to do so in this case was plain error affecting substantial rights. The charge herein must be viewed as a whole,[8] and the jury was so instructed. So viewed, it reflects that the jury was adequately instructed on the defendant's presumption of innocence, and the burden on the government to prove each and every essential element of the offenses charged beyond a reasonable doubt. Further, defendant, while taking the stand, made no effort to explain his presence at the still, but denied ever being at the still. This being the case, we cannot hold, in the particular circumstances of this case, that the Court's instructions regarding the statutory inference was plain error.[9]
 
 
 10
 Appellant's contention that it was plain error for the Court to allow the witness Reeves to testify about a picture he had seen of the appellant is also without merit. The statement complained of occurred during cross-examination of this government witness[10] after a similar line of questioning by the government had been stricken on objection and motion of appellant during direct examination. Any error was thus invited by appellant and cannot now be claimed by him as plain error affecting substantial rights.[11] In any event, if error there was, it was not prejudicial to the defendant, who took the stand and, on cross-examination, admitted a prior felony conviction.[12]
 
 
 11
 A more serious question is raised by appellant concerning production of a report of the witness Gazzola under the Jencks Act.[13] At the end of the government's direct examination of Gazzola, appellant made his timely request for any Jencks Act material in the possession of the government regarding this witness. The government produced a statement and, later during a recess but before cross-examination had begun, a supplemental statement. During cross-examination, appellant learned that the still in question had been discovered several days before the surveillance began, and that the witnesses' account of such discovery was included in Gazzola's "daily reports," submitted by him each day to his superior and covering his activities for the day. Appellant requested the daily report in which the discovery of the still was set out, under the Jencks Act, but the Court refused, accepting the government's argument that such report was an "internal government document" and hence protected from disclosure under Rule 16(b), Federal Rules of Criminal Procedure.
 
 
 12
 The government here concedes that the provisions of Rule 16(b) do not apply to material requested under the Jencks Act,[14] but contends that failure of the trial judge to order production of the daily report was at most harmless error.[15] Recognizing that the procedure set out in 18 U.S.C. § 3500(c) was not followed and that the statement is not part of the record before this Court, the government nevertheless claims that we can, from the testimony at the trial, determine that the statement did not relate to the subject matter of the direct testimony and, in any event, contained nothing which could have been used by appellant on cross-examination.
 
 
 13
 Even if we could, from the testimony about the daily report, make findings as to its relation to the direct testimony of the witness and as to its possible use to appellant on cross, findings we cannot make on the record before us, we would be very hesitant to do so. In the first place, the determination of which statements are covered in the Act is entrusted to the trial judge, with review limited to whether the lower court's determination is clearly erroneous.[16] More important, the trial judge who presided at the trial is uniquely situated to make both this and the determination of whether failure to require production of the questioned statement to appellant, if error, might have been prejudicial.[17]
 
 
 14
 Because the trial court did not determine whether or not the daily report requested by defendant under the Jencks Act was in fact within the scope of that statute, denying inspection on another, erroneous ground, the cause must be remanded to the District Court. This does not necessarily mean defendant will get a new trial. On remand the District Court will conduct such inquiry as may be necessary to determine whether or not the daily report of Gazzola is within the terms of the Jencks Act. His inquiry may involve interrogation of the witness, extrinsic evidence, or merely an in camera inspection of the statement without a hearing.[18] If it is determined that the report should have been furnished to defendant, the trial judge will next determine whether or not failure at trial to order such production resulted in prejudicial error.[19] If he concludes that there was error, he will vacate the judgment of conviction and accord appellant a new trial.
 
 
 15
 Conversely, if it is decided either that the report is not producible under the Jencks Act or that nonproduction was not prejudicial error, the trial court will supplement the record with new findings and enter a new final judgment of conviction. This will preserve to appellant the right to seek further appellate review on the augmented record.[20]
 
 
 16
 The case is remanded to the District Court for further proceedings consistent with this opinion.[21]
 
 
 
 Notes:
 
 
 [1]
 The three counts charged violations of 26 U.S.C. § 5601(a)(4), carrying on the business of a distiller without having posted bond; § 5601(a)(7), fermenting mash on premises not lawfully qualified; and § 5602, carrying on the business of a distiller with intent to defraud the United States of tax due. A fourth count, charging a violation of 26 U.S.C. § 5686, was dismissed before trial
 
 
 [2]
 Nazworth offered no defense and attempted to plead guilty at the close of the evidence. His plea was not accepted, and the jury found him guilty on all three counts
 
 
 [3]
 See Rule 52(b), F.R.Cr.P. Appellant's attorney objected to the Court's giving the instruction "for the record," admitting at the same time that it was a correct statement of the law. This type of objection would not, of course, cover the error here urged
 
 
 [4]
 26 U.S.C. § 5601(b)(2) reads as follows:
 "Whenever on trial for violation of subsection (a) (4) the defendant is shown to have been at the site or place where, and at the time when, the business of a distiller or rectifier was so engaged in or carried on, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury (or of the court when tried without jury)."
 
 
 [5]
 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965)
 
 
 [6]
 Id. at 70, 85 S.Ct. at 759, 13 L.Ed.2d at 664.
 
 
 [7]
 Id. at 69-70, 71 n. 7, 85 S.Ct. at 759-760, n. 7, 13 L.Ed.2d at 663-664, 664 n. 7. Cf., Herman v. United States, 289 F.2d 362, 367 (5th Cir.), cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961); Barfield v. United States, 229 F.2d 936, 939-940 (5th Cir. 1956); Bates v. United States, 95 U.S.App.D.C. 57, 219 F.2d 30, 33, cert. denied, 349 U.S. 961, 75 S.Ct. 891, 99 L.Ed. 1283 (1955). Compare generally, Mathes & Devitt, Federal Jury Practice and Instructions, §§ 10.10, 10.11, 32.07, 39.08, 40.04, 41.05, and accompanying Notes (1965, supp. 1968); with LaBuy, Jury Instructions in Federal Criminal Cases, §§ 17.01-1, 17.01-3, 22.04, 23.05, and accompanying Comments (1965).
 
 
 [8]
 January v. United States, 409 F.2d 31 (5th Cir. 1969); Hickman v. United States, 406 F.2d 414, 415 (5th Cir. 1969); Smith v. United States, 355 F.2d 912, 914 (5th Cir.), reh. denied, 358 F.2d 695, cert. denied, 384 U.S. 1001, 86 S.Ct. 1922, 16 L.Ed.2d 1014 (1966); Beck v. United States, 317 F.2d 865, 871 (5th Cir. 1963), cert. denied, 375 U.S. 972, 84 S.Ct. 480, 11 L.Ed.2d 419, reh. denied, 376 U.S. 929, 84 S.Ct. 656, 11 L.Ed.2d 627 (1964)
 
 
 [9]
 See United States v. Ivey, 310 F.2d 227 (4th Cir. 1962), cert. denied, 372 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733 (1963)
 Even if plain error, it would not affect the validity of the convictions on Counts Two and Three, in light of the concurrent sentences given, and the fact that the statutory inference was clearly limited to Count One, and the jury told to consider each offense separately. See United States v. Goines, 375 F.2d 575, 577 (6th Cir. 1967).
 
 
 [10]
 While appellant's counsel was questioning this witness on this issue of identification, the following colloquy took place:
 "Q Did you make an identification?
 A I did.
 Q From what?
 A A photograph.
 Q One photograph?
 A Yes sir; face view and profile."
 It is the last four words about which appellant here complains. No objection was made at trial.
 
 
 [11]
 Johnson v. United States, 318 U.S. 189, 200-201, 63 S.Ct. 549, 87 L.Ed. 704 (1943); Hanks v. United States, 388 F. 2d 171, 173 (10th Cir.), cert. denied, 393 U.S. 863, 89 S.Ct. 144, 21 L.Ed.2d 131, reh. denied, 393 U.S. 947, 89 S.Ct. 304, 21 L.Ed.2d 287 (1968); United States v. Kahn, 366 F.2d 259, 265 (2d Cir.), cert. denied, 385 U.S. 948, 87 S.Ct. 321, 17 L.Ed.2d 226, reh. denied, 385 U.S. 984, 87 S.Ct. 502, 17 L.Ed.2d 445 (1966); O'Neal v. United States, 240 F.2d 700, 702 (10th Cir. 1957); Walker v. United States, 116 F.2d 458, 462 (9th Cir. 1940); United States v. Manton, 107 F.2d 834, 847-848 (2d Cir. 1938), cert. denied, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1939); United States v. Weinberg, 129 F.Supp. 514 (M.D.Pa.), aff'd, 226 F.2d 161 (3d Cir. 1955), cert. denied, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815 (1956)
 
 
 [12]
 Cf., United States v. Brock, 408 F.2d 322 (5th Cir. 1969); United States v. Robinson, 325 F.2d 391, 395 (2d Cir. 1963).
 
 
 [13]
 18 U.S.C. § 3500
 
 
 [14]
 The prohibition set out in Rule 16(b), F.R.Cr.P., specifically excepts statements producible under the Jencks Act, 18 U. S.C. § 3500Cf., United States v. Wolfson, 289 F.Supp. 903, 912 (S.D.N.Y. 1968).
 
 
 [15]
 The government also claims that the request by appellant at trial for the material was not specific enough to preserve whatever error there was in the court's refusal to produce the reports. This claim is without merit
 
 
 [16]
 See Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); Palermo v. United States, 360 U.S. 343, 353-355, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); Canaday v. United States, 354 F.2d 849, 858 (8th Cir. 1966); Dennis v. United States, 346 F.2d 10, 18 (10th Cir. 1965), rev'd on other grounds, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); United States v. Gosser, 339 F.2d 102, 113 (6th Cir. 1964), cert. denied, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed.2d 66, reh. denied, 382 U.S. 922, 86 S.Ct. 285, 15 L.Ed.2d 237 (1965); Williams v. United States, 119 U.S.App. D.C. 177, 338 F.2d 286, 289, 5 A.L.R.3d 746 (1964)
 
 
 [17]
 See Campbell v. United States,supra note 16. The trial judge heard the witness and is aware of the tone of the trial, and can hence judge with more subtlety than we the possible effect of any inconsistency, omission, contrast of emphasis, or different order reflected in the statement. See Jencks v. United States, 353 U.S. 657, 667, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).
 
 
 [18]
 See Campbell v. United States, 365 U. S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961); Palermo v. United States,supra note 16 at 354-355, 79 S.Ct. at 1226, 3 L.Ed.2d at 1296-1297 (1959); cf., Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 971, 22 L.Ed.2d 176 (1969).
 
 
 [19]
 See Killian v. United States, 368 U.S. 231, 243-244, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); Rosenberg v. United States, 360 U.S. 367, 370-371, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); United States v. Knox Coal Co., 347 F.2d 33, 46-48 (3d Cir.), cert. denied sub nom. Lippi v. United States, 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965); Hilliard v. United States, 115 U.S.App.D.C. 86, 317 F.2d 150 (1963); Saunders v. United States, 114 U.S.App.D.C. 345, 316 F.2d 346 (1963); Karp v. United States, 277 F.2d 843, 849 (8th Cir.), cert. denied, 364 U.S. 842, 81 S.Ct. 80, 5 L.Ed.2d 65 (1960);compare Clancy v. United States, 365 U.S. 312, 315-316, 81 S.Ct. 645, 5 L.Ed. 2d 574 (1961).
 
 
 [20]
 Campbell v. United States,supra note 18, 365 U.S. at 98-99, 81 S.Ct. at 428, 5 L.Ed.2d at 438-439; see Killian v. United States, supra note 19.
 The remedial procedure set out in this and the preceding paragraphs was outlined by the Supreme Court in Campbell, and employed in Killian. Cf., Campbell v. United States, supra note 16; United States v. Shotwell Mfg. Co., 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957), on remand, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963). It has been followed, with minor variations, in Government of the Virgin Islands v. Lovell, 378 F.2d 799 (3d Cir. 1967); Williams v. United States, 117 U.S.App.D.C. 206, 328 F.2d 178 (1963), on remand, supra note 16; United States v. Chapman, 318 F.2d 912 (2d Cir. 1963), cert. denied on remand, 379 U.S. 924, 85 S.Ct. 281, 13 L.Ed.2d 337 (1964); Hilliard v. United States, supra note 19; Saunders v. United States, supra note 19, on remand, 116 U.S.App.D.C. 326, 323 F.2d 628 (1963), cert. denied, 377 U.S. 935, 84 S.Ct. 1339, 12 L.Ed.2d 299 (1964); and Ogden v. United States, 303 F.2d 724 (9th Cir. 1962), on remand, 323 F.2d 818 (1963), cert. denied, 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964).
 
 
 [21]
 This formula is used advisedly. We do not vacate the judgment of the trial court in hopes of avoiding the problem raised inOgden, supra note 20, on remand. Appealability of the new judgment below is preserved without our vacating the old. See Campbell, supra note 18; Killian, supra note 19. Nor do we retain jurisdiction, in hopes of avoiding a possible needless step in the procedure. Compare Campbell v. United States, 296 F.2d 527, 534 (1st Cir. 1961). See Ogden v. United States, supra note 20, 323 F.2d at 822 n. 10. See generally, Bell, Appellate Court Opinions and the Remand Process, 2 Ga.L.Rev. 526 (1968).